**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 2 9 2022

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

| | |
|---|---|
| **NICOLE D. WINSTEAD**<br>47 Belmont Drive<br>Little Rock, AR 72204<br><br>Plaintiff,<br><br>v.<br><br>**MORTGAGE FINANCIAL SERVICES HOME LOANS d.b.a. MORTGAGE FINANCIAL SERVICES, LLC**<br>℅ National Registered Agents, Inc.<br>124 West Capitol Avenue, Suite 1900<br>Little Rock, AR 72201<br><br>Defendant. | Civil Case No. **4:22-CV-943-KGB**<br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON**<br><br><br>This case assigned to District Judge **Baker**<br>and to Magistrate Judge **Kearney** |

Plaintiff Nicole D. Winstead through counsel, states as follows for her *Complaint for Damages* (the "Complaint") against Defendant Mortgage Financial Services Home Loans d.b.a. Mortgage Financial Services, LLC:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Nicole D. Winstead ("Plaintiff" or "Winstead") is the owner of the real property and improvements located thereupon located at and commonly known as 47 Belmont Drive, Little Rock, AR 72204 (the "Home").

2.     Plaintiff currently occupies and maintains the Home as her primary, principal residence and has maintained the Home as such for all times relevant to the causes of action pleaded in this Complaint.

3.     On May 24, 2019, Plaintiff executed a promissory note in the amount of $107,172.00 (the "Note") and executed a mortgage on the Home purportedly securing the

Note (the "Mortgage") (collectively, the "Loan"). *See*, a copy of the Loan, attached as **Exhibit 1**.

4.      Defendant Mortgage Financial Services Home Loans d.b.a. Mortgage Financial Services, LLC ("Defendant" or "MFS") is a foreign limited liability company organized under the laws of Louisiana, registered to do business in the State of Arkansas, and with its corporate headquarters located at 10922 Coursey Boulevard, Building B, Baton Rouge, LA 70816.

5.      MFS is the current servicer and, on information and belief, the current assignee of the Loan and, upon information and belief, has serviced the Loan at all times relevant to the causes of action pleaded in this Complaint since obtaining servicing rights to the Loan from non-party ServiSolutions.

6.      Jurisdiction is conferred by 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

7.      This Court has supplemental jurisdiction to hear any state law statutory and common law claims pleaded, *infra*, or that otherwise may arise pursuant to 28 U.S.C. § 1367.

8.      Venue is appropriate within this District pursuant to 28 U.S.C. § 1391(b) as: (1) A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District; and, (2) the Home, the property that is the subject of the action, is located within this District.

## SUMMARY OF CAUSES OF ACTION

9.      Plaintiff files this action in substantial part to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

10.     In January 2013, the CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

12.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[1]." 12 U.S.C. § 2605(k)(1)(C).

13.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10696, 10739 (emphasis added).

14.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

15.     MFS is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

16.     Plaintiff asserts a claim for relief against MFS for violations of the specific rules under RESPA and Regulation X, as set forth, *infra.*

17.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

## STATEMENT OF FACTS

18.     Plaintiff, suffering from a financial setback, became delinquent on her obligations under the Loan.

19.     On oar born January 6, 2020, ServiSolutions, the prior servicer of the Loan, sent correspondence to Plaintiff indicating that after reviewing Plaintiff's complete loss mitigation application, that she had been approved for "UNEMPLOYMENT SPECIAL FORBEARANCE" also identified as an "FHA 4 month special forbearance" (the "Agreement"). *See*, a copy of the Agreement, attached as **Exhibit 2**.

20.     Pursuant to the terms of the Agreement, Plaintiff was to remit four (4) payments, each in the amount of $500.00, on the 10th day of the month for the months of January through April. *See*, Exhibit 2.

21.     Plaintiff, executed and accepted the Agreement on January 8, 2020 and remitted the first payment due thereunder. *See***,** a receipt for proof of such payment, attached as **Exhibit 3**.

22.     ServiSolutions advised Plaintiff in January 2020 that servicing of the Loan was transferring to MFS effective on or around February 1, 2020 and that Plaintiff would receive

correspondence with the details pertaining to the same from MFS—Plaintiff has not received a copy of any such correspondence to date.

23.     Upon obtaining servicing rights to the Loan, MFS refused to honor the terms of the Agreement and, on numerous occasions, has stated to Plaintiff that it would not honor the terms of the Agreement or of any other forbearance.

24.     As MFS refused to honor the terms of the Agreement, Plaintiff sent correspondence to MFS dated April 28, 2020 requesting a COVID-19 forbearance pursuant to the CARES Act (H.R. 748). *See*, a copy of such correspondence, attached as **Exhibit 4**.

25.     On May 12, 2020, MFS, through Niswanger Law Firm, PLC, sent correspondence to Plaintiff stating that the Loan was no longer a federally backed mortgage loan subject to the CARES Act and that MFS would not issue a forbearance to Plaintiff. *See*, a copy of such correspondence, attached as **Exhibit 5**.

26.     On or about July 17, 2020, MFS initiated foreclosure proceedings in the Circuit Court for Pulaski County, Arkansas, Case No. 60CV-20-3913 (the "Foreclosure").

27.     The Foreclosure was dismissed without prejudice effective December 23, 2021 by the agreement of all parties thereto.

28.     On or about January 21, 2022, MFS initiated a non-judicial foreclosure of the Loan by filing a Limited Power of Attorney with the Circuit and County Clerk for Pulaski County, Arkansas, exercising its power of sale pursuant to Ark. Code Ann. Section 18-50-115 and appointing Albertelli Law to proceed with the foreclosure. *See*, a copy of such recorded document, attached as **Exhibit 6**.

29.     Plaintiff submitted a loss mitigation application to MFS on or about January 28, 2022 (the "Application").

30.     MFS sent correspondence to Plaintiff dated January 28, 2022, stating that the Application was incomplete and that Plaintiff must submit completed IRS Form 4506-C, a written explanation of Plaintiff's hardship, and two most recent bank statements or other documentation documenting self-employed income (the "Missing Documents Letter"). *See*, a copy of the Missing Documents Letter, attached as **Exhibit 7**.

31.     Despite Plaintiff's attempt to have MFS review the Application, MFS claimed that it was incomplete and denied Plaintiff for loss mitigation options that would enable Plaintiff to remain in her Home.

32.     A foreclosure sale of Plaintiff's Home was scheduled for March 22, 2022.

33.     In order to avoid the foreclosure sale of her Home, Plaintiff filed for protection under Title 11, Chapter 13 of the United States Bankruptcy Code on March 11, 2022, in the United States Bankruptcy Court for the Eastern District of Arkansas, Case No. 4:22-bk-10620 (the "Bankruptcy").

34.     On or about March 6, 2022, Plaintiff sent numerous pieces of correspondence to MFS at the address designated for borrowers to send notices of error pursuant to 12 C.F.R. § 1024.35 and requests for information pursuant to 12 C.F.R. § 1024.36 (the "Designated Address"), specifically:

      a.  Correspondence captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to honor the terms of or otherwise implement or give effect to a loss mitigation plan; notice of errors pursuant to 12 C.F.R. § 1024.35(b)(5) for imposition of fees for which there was no reasonable basis to impose; request for information pursuant to 12 C.F.R. § 1024.36" [Tracking No. 70212720000057055056] ("NOE #1/RFI #1"); and,

      b.   Correspondence captioned "Request for Information Pursuant to 12 C.F.R. §
1024.36" seeking additional information concerning the Loan, including a
transaction history of the Loan, escrow analyses, and information related to loss
mitigation, among other items [Tracking No. 70212720000057055070] ("RFI #2").

*See*, copies of NOE#1/RFI #1 and RFI #2, along with the Tracking Information for the same
obtained from the USPS's website, attached as **Exhibit 8** and **Exhibit 9**, respectively.

35.    Through NOE #1/RFI #1, Plaintiff alleged that MFS committed an error related to
the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in failing to honor the Agreement
as well as multiple errors in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(5) for
imposing fees, costs, and charges against Plaintiff and the Loan for which MFS lacked a reasonable
basis as such amounts were the result of MFS's refusal to honor the Agreement. *See*, Exhibit 8.

36.    Through NOE #1/RFI #1, Plaintiff requested that MFS provide:

      a.   A copy of any correspondence MFS sent to Plaintiff since the origination of the
Loan advising that servicing rights to the Loan transferred along with proof of
delivery of the same to Plaintiff; and,

      b.   A copy of any correspondence MFS sent to Plaintiff since the origination of the
Loan advising that ownership of the Loan transferred or that the Loan had otherwise
been assigned, purchased, or sold to another entity, along with proof of delivery of
the same to Plaintiff.

*See*, Exhibit 8.

37.    MFS received NOE #1/RFI #1 and RFI #2 at the Designated Address on or about
March 15, 2022.

38.    MFS sent correspondence dated March 22, 2022 acknowledging receipt of NOE #1/RFI #1 and RFI #2.

39.    MFS sent correspondence dated April 22, 2022, in response to NOE #1/RFI #1 and RFI #2 (the "Response"). *See*, a copy of the Response, without enclosures, attached as Exhibit 10.

40.    Through the Response, MFS failed to address any of the errors alleged by and through NOE #1/RFI #1. *See*, Exhibits 8 and 10.

41.    Ironically, presumably in relation to the alleged errors, MFS states that "[f]or any additional documents requested or errors that are in dispute before the loan servicing transfer on November 18, 2021, you will need to contact previous subservicers. "Prior Sub-servicer: Mortgage Financial Services, LLC". *See*, Exhibit 10.

42.    That is, MFS states that it will not provide any information or respond to any errors predating November 18, 2021, and that to obtain a response to such issues, Plaintiff must contact MFS.

43.    Through the Response, MFS failed to provide all of the information requested by and through NOE #1/RFI #1. *See*, Exhibits 8 and 10.

44.    While MFS did provide a copy of correspondence dated December 1, 2021, stating that the servicing rights to the Loan were being transferred from "Mortgage Financial Services, LLC to MORTGAGE FINANCIAL SERVICES, LLC subserviced by ServiceMac, LLC" no other such correspondence was provided. *See*, a copy of such correspondence, attached as **Exhibit 11**.

45.    Presumably, some other correspondence should have been generated advising Plaintiff of the transfer of servicing rights from ServiSolutions to MFS, and not just MFS to itself, but MFS failed to provide such correspondence.

46.     Moreover, MFS failed to provide proof of mailing or delivery of any of the notices requested through NOE #1/RFI #1 despite Plaintiff expressly requesting the same and disputing whether any such notice was provided. *See*, Exhibits 8, 10, and 11.

47.     Through the Response, MFS failed to provide the following information requested through RFI #2:

      a.     A life of loan mortgage transaction history—the provided transaction history only dates back to November 2021; and,

      b.     Copies of any and all servicing notes related MFS's servicing of the Loan.

*See*, Exhibits 9 and 10.

48.     As a direct and proximate result of MFS's failure to properly respond to NOE #1/RFI #1 and RFI #2, on or about August 9, 2022, Plaintiff, through counsel, sent another notice of error and renewed request for information ("NOE #2/RFI #3") to MFS at the Designated Address via Certified U.S. Mail [Tracking No. 70220410000252636907] and incurred fees, costs, and expenses for the same. *See*, a copy of NOE #2/RFI #3, without supporting enclosures, is attached as **Exhibit 12**.

**IMPACT UPON AND DAMAGES SUFFERED BY PLAINTIFF**

49.     Due to MFS's actions in refusing to honor the Agreement and to subsequently correct its errors, Plaintiff was forced to defend against the Foreclosure, initiate and maintain the Bankruptcy, and incur legal fees and costs for the same.

50.     MFS's improper actions caused Plaintiff to suffer from actual damages including, but not limited to:

      a.     Legal fees, costs, and expenses to submit the NOE #1/RFI #1 and RFI #2 to MFS in a good faith attempt to obtain information and amicably resolve this matter or to

have MFS mitigate the harm caused to Plaintiff to which Plaintiff did not receive a proper or adequate response;

b.  Due to MFS's failure to properly respond to NOE #1/RFI #1 and RFI #2, Plaintiff was caused to incur legal fees, costs, and expenses in order to draft and submit NOE #2/RFI #3 to MFS.

c.  Unwarranted harm to her credit rating and a significant delay in the rehabilitation of her credit for which she has not received proper redress from MFS;

d.  Having to file for the Bankruptcy to avoid the sale of her Home and to incur legal fees, expenses, and costs for the same, along with other repercussions stemming from the filing of the Bankruptcy;

e.  Due to the credit harm and the filing of the Bankruptcy, discussed *supra*, Plaintiff has been unable to obtain a business micro loan in the amount of $25,000.00 which was sought to support Plaintiff's personal business through funding marketing, advertising, and the purchase and upgrading of essential equipment which has prevented revenue growth from being realized;

f.  Improper fees and charges imposed against Plaintiff and the Loan due to the unnecessarily continued delinquency and Foreclosure for which Plaintiff is or will become personally obligated or which otherwise negatively impact any equity in the Home to which she would be entitled; and,

g.  Severe emotional distress driven by MFS's actions and by reasonable and justifiable fear that MFS's failure to honor the Agreement would be the start of a slippery slope leading to the foreclosure sale of their Home which has resulted in

frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## COUNT ONE:
## BREACH OF CONTRACT

51.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 50 in their entirety, as if fully rewritten herein.

52.     The Agreement was a valid contract between the ServiSolutions and Plaintiff and MFS, as a successor to ServiSolutions, was bound by the terms of the Agreement. *See*, Exhibit 2.

53.     MFS unilaterally breached the contract by repudiating the same and by advising Plaintiff that it had no intention of honoring the Agreement.

54.     MFS breached the contract in bad faith as evidenced by its failure to correct its breach despite being put on notice of the same through, *inter alia*, NOE #1/RFI #1 and NOE #2/RFI #3, as well as Plaintiff's repeated prior communications. *See*, Exhibit 8 and 12.

55.     Plaintiff has been harmed by MFS's breach of the Agreement and has suffered actual damages as further pleaded, *supra*.

56.     As a result of its actions, MFS is liable to Plaintiff for actual damages as further alleged, *supra*, as well as reasonable attorneys' fees and costs.

## COUNT TWO:
## VIOLATIONS OF 12 C.F.R. §§ 1024.41(f)(1) AND (j) AND 12 U.S.C. § 2605(k)

57.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 50 in their entirety, as if fully rewritten herein.

58.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

59.    A servicer is prohibited from making the first notice or filing required by

for any judicial or non-judicial foreclosure process unless:

(i)  A borrower's mortgage loan obligation is more than 120 days delinquent;
(ii) The foreclosure is based on a borrower's violation of a due-on-sale clause; or
(iii)The servicer is joining the foreclosure action of a superior or subordinate
     lienholder.

12 C.F.R. § 1024.41(f)(1).

60.    "A small servicer shall not make the first notice or filing required by

applicable law for any judicial or non-judicial foreclosure process and shall not move for

foreclosure judgment or order of sale, or conduct a foreclosure sale, if a borrower is

performing pursuant to the terms of an agreement on a loss mitigation option." 12 C.F.R.

§ 1024.41(j).

61.    MFS refused to honor the terms of the Agreement and breached the same

despite Plaintiff's acceptance of the same and performance thereunder.

62.    Had MFS honored the Agreement, Plaintiff would not have been 120 days

delinquent at the time of MFS filing the Foreclosure—that is, but for MFS's breach of the

Agreement, the Loan would not have been 120 days delinquent as of July 17, 2020.

63.    MFS's filing of the Foreclosure on July 17, 2020, despite Plaintiff accepting

the Agreement, was in violation of 12 C.F.R. §§ 1024.41(f)(1) and/or (j) as well as 12

U.S.C. § 2605(k)(1)(E) and, as a result, Plaintiff has suffered actual damages as detailed,

*supra,* including but not limited to additional and continued harm to her credit standing, a

delay in the rehabilitation of her credit, improper fees, and significant emotional distress.

64.    MFS's actions are part of a pattern and practice of behavior in conscious disregard

for Plaintiff's rights.

65.    MFS's conduct as pled, *supra,* shows a conscious disregard for Plaintiff's rights.

66.     As a result of MFS's actions, MFS is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

67.     Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE:
## VIOLATIONS OF 12 C.F.R. § 1024.35(e) AND 12 U.S.C. §§ 2605(e) AND (k)

### (Failure to timely and/or properly respond to NOE #1)

68.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 50 in their entirety, as if fully rewritten herein.

69.     "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a)

70.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

71.     A servicer must respond to a notice of error by either:

(A)   Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)   Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i); *see also* 12 U.S.C. § 2605(e)(2)(B).

72.     A servicer must respond to a notice of error in compliance with 12 C.F.R. §

1024.35(e)(1):

> (A)  Not later than seven days (excluding legal public holidays, Saturdays, and
>       Sundays) after the servicer receives the notice of error for errors asserted
>       under paragraph (b)(6) of this section.
> (B)  Prior to the date of a foreclosure sale or within 30 days (excluding legal public
>       holidays, Saturdays, and Sundays) after the servicer receives the notice of
>       error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10)
>       of this section.
> (C)  For all other asserted errors, not later than 30 days (excluding legal public
>       holidays, Saturdays, and Sundays) after the servicer receives the applicable
>       notice of error.

12 C.F.R. § 1024.35(e)(3)(i); *see also* 12 U.S.C. § 2605(e)(2).

73.     "A servicer of a federally related mortgage shall not...fail to take timely action to

respond to a borrower's requests to correct errors relating to allocation of payments, final balances

for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

12 U.S.C. § 2605(k)(1)(C).

74.     A servicer of a federally related mortgage shall not "fail to comply with any other

obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate

to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

75.     NOE #1/RFI #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a)

as it is a "written notice from the borrower that asserts an error and that includes the name of the

borrower, information that enables the servicer to identify the borrower's mortgage loan account,

and the error the borrower believes has occurred." *See*, Exhibit 8.

76.     Plaintiff sent NOE #1/RFI #1 to MFS at the Designated Address and MFS received

the same at such address. *See*, Exhibit 8.

77.     Through NOE #1/RFI #1, Plaintiff alleged that MFS committed an error related to

the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in failing to honor the Agreement

as well as multiple errors in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(5) for imposing fees, costs, and charges against Plaintiff and the Loan for which MFS lacked a reasonable basis as such amounts were the result of MFS's refusal to honor the Agreement. *See*, Exhibit 8.

78.     MFS, through the Response, failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). *See*, Exhibit 10.

79.     Through the Response, MFS did not admit that any errors occurred in the servicing of the Loan or otherwise correct any such errors. *See*, Exhibit 10.

80.     Through the Response, MFS wholly failed to address any of the errors alleged through NOE #1/RFI #1. *See*, Exhibit 8 and 10.

81.     On information and belief, MFS failed to perform a reasonable investigation into all of the errors alleged through NOE #1 as evidenced by its failure to make reference to or address any of the errors alleged through NOE #1/RFI #1, and by directing the client to contact MFS concerning errors predating November 18, 2021, despite NOE #1/RFI #1 being sent to MFS and the Response being prepared by MFS. *See*, Exhibit 8 and 10.

82.     MFS's failure to timely and properly respond to NOE #1/RFI #1, by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through NOE #1/RFI #1, constitute a violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Plaintiff has suffered actual damages as detailed, *supra*.

83.     MFS's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

84.     MFS's conduct as pled, *supra*, shows a conscious disregard for Plaintiff's rights.

85.     As a result of MFS's actions, MFS is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

86.     Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT FOUR:
## VIOLATIONS OF 12 C.F.R. § 1024.36(d) AND 12 U.S.C. § 2605(k)

### (Failure to timely and properly respond to NOE #1/RFI #1 and RFI #2)

87.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 50 in their entirety, as if fully rewritten herein.

88.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

89.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

90.     A servicer must respond to a request for information by:

(i)     Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii)    Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.36(d)(1).

91.     A servicer is not required to comply with 12 C.F.R. § 1024.36(d) if:

(i)   Duplicative information. The information requested is substantially the same as information previously requested by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (c) and (d) of this section.

(ii)  Confidential, proprietary or privileged information. The information requested is confidential, proprietary or privileged.

(iii) Irrelevant information. The information requested is not directly related to the borrower's mortgage loan account.

(iv)  Overbroad or unduly burdensome information request. The information request is overbroad or unduly burdensome. An information request is overbroad if a borrower requests that the servicer provide an unreasonable volume of documents or information to a borrower. An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) of this section or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances. To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information.

12 C.F.R. § 1024.36(f)(1).

92.   If a servicer determines it is not required to respond to a request for information because one of the reasons enumerated in 12 C.F.R. § 1024.36(f)(1) is applicable, a servicer must identify the basis for such a determination in its response to the request for information. 12 C.F.R. § 1024.36(f)(2).

93.   Furthermore, a servicer must properly respond to a request for information within the following deadlines:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A)   Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B)   For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

12 C.F.R. § 1024.36(d)(2)(i).

94.     NOE #1/RFI #1 and RFI #2 are each a request for information as defined by 12 C.F.R. § 1024.36(a) as each contains Plaintiff's name, loan number, property address, and request information related to the Loan. *See*, Exhibits 8 and 9.

95.     Plaintiff sent NOE #1/RFI #1 and RFI #2 to MFS at the Designated Address and MFS received each of the same at the Designated Address. *See*, Exhibits 8 and 9.

96.     Through the Response, MFS failed to provide all of the information requested by and through NOE #1/RFI #1. *See*, Exhibits 8 and 10.

97.     While MFS did provide a copy of correspondence dated December 1, 2021, stating that the servicing rights to the Loan were being transferred from "Mortgage Financial Services, LLC to MORTGAGE FINANCIAL SERVICES, LLC subserviced by ServiceMac, LLC" no other such correspondence was provided. *See*, Exhibit 11.

98.     Presumably, some other correspondence should have been generated advising the Borrower of the transfer of servicing rights from ServiSolutions to MFS, and not just MFS to itself, but MFS failed to provide such correspondence.

99.     Moreover, MFS failed to provide proof of mailing or delivery of any of the notices requested through NOE #1/RFI #1 despite Plaintiff expressly requesting the same and disputing whether any such notice was provided. *See*, Exhibits 8, 10, and 11.

100.     Through the Response, MFS failed to provide the following information requested through RFI #2:

    a.  A life of loan mortgage transaction history—the provided transaction history only dates back to November 2021; and,

    b.  Copies of any and all servicing notes related MFS's servicing of the Loan.

*See*, Exhibits 9 and 10.

101.    Through the Response, MFS stated that the "remaining items requested are considered proprietary, confidential, privileged or irrelevant to the servicing of this [Loan]". *See*, Exhibit 11.

102.    On its face, MFS's determination that it is not required to provide the information requested is not appropriate nor reasonable. *See*, Exhibit 10.

103.    As to relevance, all of the information requested through NOE #1/RFI #1 and RFI #2 is relevant to the Loan.[2]

104.    Moreover, the information that MFS has refused to provide through the Response is not proprietary or confidential as a significant portion of the information consists of items that MFS is required to provide to Plaintiff under federal law, such as notices of the transfer of ownership or of the transfer of servicing rights concerning the Loan.

105.    Further, the unfulfilled requests contained in NOE #1/RFI #1 and RFI #2 do not bear any resemblance to the types of requests through which the CFPB provides guidance as to what constitutes a request that seeks proprietary, confidential, or privileged

---

[2] Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(f)(1)(iii) provides:
1.  Examples of irrelevant information. The following are examples of irrelevant information:
    i.   Information that relates to the servicing of mortgage loans other than a borrower's mortgage loan, including information reported to the owner of a mortgage loan regarding individual or aggregate collections for mortgage loans owned by that entity;
    ii.  The servicer's training program for servicing personnel;
    iii. The servicer's servicing program guide; or
    iv.  Investor instructions or requirements for servicers regarding criteria for negotiating or approving any program with a borrower, including any loss mitigation option.
Supplement I to Part 1024. The requests contained in NOE #1/RFI #1 and RFI #2 bear no relation to the types of requests the CFPB have determined to be "irrelevant". *See*, Exhibits 9 and 10.

information,[3] and regardless, to the extent that such information may be included within some of the information and/or documents requested through NOE #1/RFI #1 and RFI #2, such information and/or documentation can be withheld and/or redacted as the fact that some such information may be contained within such documents does not wholly absolve MFS of their obligation to produce any information contained within such documents that is not proprietary, confidential, or privileged.

106. The basis of any determination included in the Response that MFS id not need to provide information requested through NOE #1/RFI #1 and RFI #2 was in bad faith or was otherwise wholly inappropriate.

107. MFS's failure to provide proper responses to NOE #1/RFI #1 and RFI #2 constitute two (2) violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k), one (1) such violation for each of the requests for information to which MFS failed to properly respond, and has caused Plaintiff to suffer actual damages as detailed, *supra*, including, but not limited to incurring legal fees and expenses for preparing and sending NOE #2 which would not have been necessary but for MFS's failure to properly respond to NOE #1/RFI #1 and RFI #2.

---

[3] Comment 1 to 12 C.F.R. § 1024.36(f)(1)(ii) provides illustrative examples as to what constitutes confidential, proprietary, or privileged information for the purposes of requests for information pursuant to 12 C.F.R. § 1024.36:

Confidential, proprietary or privileged information may include information requests relating to, for example:

    i.  Information regarding management or profitability of a servicer, including information provided to investors in the servicer.
    ii. Compensation, bonuses, or personnel actions relating to servicer personnel, including personnel responsible for servicing a borrower's mortgage loan account;
    iii. Records of examination reports, compliance audits, borrower complaints, and internal investigations or external investigations; or
    iv. Information protected by the attorney-client privilege

Supplement I to Part 1024.

108.    MFS's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiff's rights and in abdication of MFS's obligations under RESPA and Regulation X.

109.    MFS's conduct as pleaded, *supra*, shows a conscious disregard for Plaintiff's rights and MFS's obligations under RESPA and Regulation X.

110.    As a result of MFS's actions, MFS is liable to Plaintiff for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

111.    Additionally, Plaintiff requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

**WHEREFORE**, Plaintiff Nicole D. Winstead prays that this Court grant judgment against Defendant Mortgage Financial Services Home Loans d.b.a. Mortgage Financial Services, LLC, and award her the following:

A.    An award for actual damages from Defendant Mortgage Financial Services Home Loans d.b.a. Mortgage Financial Services, LLC in an amount to be determined at trial for the allegations contained in Counts One through Four;

B.    An award of statutory damages of Two Thousand Dollars ($2,000.00) from Defendant Mortgage Financial Services Home Loans d.b.a. Mortgage Financial Services, LLC for each violation of RESPA as contained in Counts Two through Four for a total of Eight Thousand Dollars ($8,000.00);

C.    An award of reasonable attorneys' fees and costs as to Counts Two through Four; and,

D.    For such other relief which this Court may deem appropriate.

## **JURY DEMAND**

Plaintiff Nicole D. Winstead hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully submitted,

Sara Rogers #2003175
PO Box 5545
West Memphis, AR 72303
(870) 732-8787 Phone
(870) 732-8890 Fax
sararogers@sararogerslawfirm.com

# EXHIBIT 1

Loan Number: ███████                                                MIN: **10061094319040265**

**Multistate**                                **NOTE**                    FHA Case Number:
                                                                          **031-5220525-703**

May 24, 2019                                                              Little Rock, ARKANSAS
(Date)                                                                    (City, State)

47 Belmont Drive
Little Rock, ARKANSAS 72204
(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $107,172.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Mortgage Financial Services, LLC**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **4.500%**. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on July 1, 2019. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on June 1, 2049, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

**Mortgage Financial Services, LLC**
**10922 Coursey Blvd, Bldg. B**
**Baton Rouge, LA 70816**
                                                       or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $543.02.

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE FHA Fixed Rate Note                                                          1/2015-b

Page 1 of 3

IDS, Inc.

Loan Number: ███████████                                        MIN: **100610943190402553**

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

---

MULTISTATE FHA Fixed Rate Note                                          1/2015-b

IDS, Inc.

Loan Number: ███████

MIN: **100610943190402553**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Nicole Winstead                          -Borrower

_____ (Seal)
                                                  -Borrower

_(Sign Original Only)_

Loan originator (Organization): Mortgage Financial Services, LLC; NMLS #: 43021
Loan originator (Individual): Scottie Brandon Taylor; NMLS #: 1083832

MULTISTATE FHA Fixed Rate Note                                    1/2015-b

Page 3 of 3

IDS, Inc.

Loan Number: ███████████                                    MIN: **100610943190402553**

# ALLONGE TO PROMISSORY NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.

*This* _____ *day of* _____, _____.

*Note Date:*              **May 24, 2019**

*Original Loan Amount:*   **$107,172.00**

*Interest Rate:*          **4.500%**

*Maturity Date:*          **June 1, 2049**

*Borrower(s) Name(s):*    **Nicole Winstead**

*Property Address:*       **47 Belmont Drive
                          Little Rock, ARKANSAS 72204**

*Pay to the order of:*

Without Recourse

**Mortgage Financial Services, LLC**


_____

*Signature of Duly Authorized Officer*

_____

*Typed Name of Signatory*

*Title of Signatory:* _____

IDS, Inc.

Please return documents to
Lenders Title Company
1501 North University, Suite 100
Little Rock, AR  72207

**2019033374**
PULASKI CO. AR FEE $70.00
PRESENTED
5/30/2019 3:07:18 PM
RECORDED
05/30/2019 03:15:05 PM
TERRI HOLLINGSWORTH
Circuit / County Clerk
BY: BRANDI AUSTIN
DEPUTY RECORDER



WHEN RECORDED, MAIL TO:
Mortgage Financial Services, LLC
10922 Coursey Blvd. Bldg. B
Baton Rouge, LOUISIANA 70816

This instrument was prepared by:
THE LAW OFFICE OF CHRISTOPHER J. SULLIVAN, PLLC
P.O. BOX 271066
Flower Mound, TEXAS 75027-1066
214-784-9900

_____ (Space Above This Line For Recording Data) _____

# MORTGAGE

| FHA Case Number: |
| 031-5220525-703 |

MIN: 100610943190402553
SIS Telephone #: (888) 679-MERS

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) "Security Instrument" means this document, which is dated May 24, 2019, together with all Riders to this document.

(B) "Borrower" is Nicole Winstead, an unmarried woman. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MICHIGAN 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is Mortgage Financial Services, LLC, organized and existing under the laws of Louisiana.
Lender's address is 5201 Jerry Drive, Little Rock, ARKANSAS 72223.

(E) "Note" means the promissory note signed by Borrower and dated May 24, 2019. The Note states that Borrower owes Lender ONE HUNDRED SEVEN THOUSAND ONE HUNDRED SEVENTY-TWO AND NO/100 Dollars (U.S. $107,172.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 1, 2049.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

FHA Arkansas Mortgage with MERS 1/2015

Page 1 of 10

ICS, Inc. - 59405



2)

19 - 015839-190 PQ

Please return documents to
Lenders Title Company
1501 North University, Suite 109
Little Rock, AR 72207

WHEN RECORDED, MAIL TO:
**Mortgage Financial Services, LLC**
**10922 Coursey Blvd. Bldg. B**
**Baton Rouge, LOUISIANA 70816**

This instrument was prepared by:
THE LAW OFFICE OF CHRISTOPHER J. SULLIVAN, PLLC
P.O. BOX 271066
Flower Mound, TEXAS 75027-1066
214-784-9900

_____ (Space Above This Line For Recording Data) _____

# MORTGAGE

| FHA Case Number: |
|---|
| **031-5220525-703** |

MIN: **100610943190402553**
SIS Telephone #: **(888) 679-MERS**

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **May 24, 2019**, together with all Riders to this document.

**(B) "Borrower"** is Nicole Winstead, an unmarried woman. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of P.O. **Box 2026, Flint, MICHIGAN 48501-2026**, tel. **(888) 679-MERS.**

**(D) "Lender"** is **Mortgage Financial Services, LLC**, organized and existing under the laws of **Louisiana**.
Lender's address is **5201 Jerry Drive, Little Rock, ARKANSAS 72223.**

**(E) "Note"** means the promissory note signed by Borrower and dated **May 24, 2019**. The Note states that Borrower owes Lender ONE **HUNDRED SEVEN THOUSAND ONE HUNDRED SEVENTY-TWO AND NO/100** Dollars (U.S. **$107,172.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2049.**

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

---

FHA Arkansas Mortgage with MERS 1/2015

Page 1 of 10

IDS, Inc. - 59405

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☒ Planned Unit Development Rider
☐ Other(s) (specify):

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County of **Pulaski**:

**Lot 432, Broadmoor Addition to the City of Little Rock, Pulaski County, Arkansas.**

Parcel ID Number: **44L1060043000**

which currently has the address of    **47 Belmont Drive
Little Rock, ARKANSAS 72204**                                              ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually

analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien, in legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law

requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such

refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by th.s Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

It is understood and agreed to by Borrower that this Security Instrument is subject to the foreclosure procedures of the Arkansas Statutory Foreclosure Law, Act 53 of 1987, as amended from time to time (the "Act"), for Borrower's breach of any covenant or agreement in this Security Instrument. In furtherance and not in limitation of the provisions of Section 11, any forbearance by Lender in exercising any right or remedy under the Act shall not be a waiver of or preclude acceleration and the exercise of any right or remedy under the Act, or at the option of Lender, use of judicial foreclosure proceedings.

**23. Release.** Upon payment in full of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in, and statutory redemption of, the Property and all right of appraisement of the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ Witness          _____ Witness

_____ (Seal)            _____ (Seal)
Nicole Winstead                  -Borrower                                           -Borrower

FHA Arkansas Mortgage with MERS 1/2015

Page 9 of 10

IDS, Inc - 56405

State of     **ARKANSAS**

County of     **Pulaski**

On this     24th     day of     **May**     ,     2019     , before me, a Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments,) appeared the within named **Nicole Winstead**, to me personally well known (or satisfactorily proven to be such person), who stated and acknowledged that he/she/they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this _____ 24th _____ day of _____ **May** _____ , _____ 2019 _____ .

My Commission Expires: April 19, 2025

Notary Public     Pamela J. Quinn

Loan originator (Organization): **Mortgage Financial Services, LLC**; NMLS #: **43021**
Loan originator (Individual): **Scottie Brandon Taylor**; NMLS #: **1083832**

Lien Holder:     **Mortgage Financial Services, LLC**
Address:     **5201 Jerry Drive**
               **Little Rock, ARKANSAS 72223**
Telephone Number:     **817-601-9010**
Contact **Mortgage Financial Services, LLC** for release of lien.

FHA Arkansas Mortgage with MERS 1/2015

Page 10 of 10

IDS, Inc - 59405

MIN: **100610943190402553**
*FHA Case Number: 031-5220525-703*

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **24th day of May, 2019**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Mortgage Financial Services, LLC** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**47 Belmont Drive**
**Little Rock, ARKANSAS 72204**
(Property Address).

The Property Address is a part of a planned unit development ("PUD") known as

**Broadmoor Addition**
(Name of Planned Unit Development).

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required

---

FHA — **MULTISTATE PUD Rider**                                                    1/2015

Page 1 of 2

IDS, Inc.

coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)         _____ (Seal)
Nicole Winstead                 -Borrower                                       -Borrower

---

IDS, Inc.

# EXHIBIT 2




A Division of Alabama Housing Finance Authority

P.O. Box 242928
Montgomery, AL 36124-2928

January 06, 2020


Nicole Winstead

47 Belmont Dr
Little Rock, AR 72204


RR: Loan Number 

Dear Customer(s):

ServiSolutions has reviewed your application for Loss Mitigation, and we are pleased to inform you that you have qualified for the following program:

UNEMPLOYMENT SPECIAL FORBEARANCE

This Forbearance Plan is a temporary reduction of your mortgage payments intended to allow you the time and flexibility to manage the financial challenges affecting your ability to pay your mortgage. As a result, you may make the monthly payment for the duration of the term set forth below in lieu of your regular monthly mortgage payment. Other terms of your mortgage remain unchanged during this Forbearance Plan. As a result of making reduced payments, you will become delinquent on your mortgage and your credit score will be impacted. This program is limited to a maximum of 12 months of delinquent payments and will require a subsequent evaluation for a more permanent Loss Mitigation option to cure the default.

Any bankruptcy filing prior to or after acceptance into this program requires court approval prior to receipt of payment. Chapter 7 bankruptcy discharge may affect which Loss Mitigation tool is utilized to bring your account current.

TIME IS OF THE ESSENCE
Please sign and return the agreement below by January 21, 2020. If your loan is in foreclosure, the first payment must be received via CERTIFIED FUNDS by January 21, 2020 in order to stop the foreclosure process. The address to return the agreement and payment address are below. If you have questions, please call 866-339-2432 option 3.

Sincerely,

Njuri Thomas
Loss Mitigation Department

LM012-1 TXN



ServSol.com



A Division of Alabama Housing Finance Authority

P.O. Box 242928
Montgomery, AL 36124-2928

January 06, 2020

Loan Number: ███████

### Present Loan Information

1) Unpaid Principal Balance: $ 107,030.88 as of August 01, 2019
2) Interest Rate: 4.50000%
3) Principal and Interest: $ 543.02
4) Monthly County Taxes: $ 80.92
5) Monthly Hazard Insurance: $ 107.58
6) Monthly Mortgage Insurance: $ 74.06
7) Delinquent payments: 6, August 01, 2019 to January 01, 2020
8) Total of Payments (excluding fees): $ 4,833.48

### Workout Calculation Input

9) Gross Income: $ 957
10) Net Income: $ 957.67
11) Expenses: $ 2,692.45
12) Market/Modification Rate: 3.075%
13) Current Escrow: $ 262.56
14) Re-Analyzed Escrow: $ 262.56
15) Delinquent Escrow and Distributions: $ 3,185.96
16) Delinquent Interest: $ 3,593.01
17) Foreclosure or Bankruptcy Fees: $ 0

ServiSolutions performs servicing actions on behalf of your insurer
by use of the guidelines set by your insurer and not we ourselves.
Escrow payments, comprised of county taxes, hazard insurance, and
mortgage insurance are subject to change, which may increase or
decrease the amount of the mortgage payment. If an escrow shortage is
present, the amount is added to the calculation of the monthly payment.
The amount of total payments shown above is the amount to bring
your payments current and not a reinstatement amount or the amount
to bring your account completely current as it does not include late
charges or other fees that have been assessed. This total may consist
of different monthly payments due to escrow changes. Income and expenses
are based on verified documentation provided as well as insurer
guidelines. This includes but is not limited to the verification and
calculation of self employment income, deferred and collection debt,
as well as use of the IRS Standards for food, transportation, etc.
Market/Modification rates are determined by insurer guidelines.
Delinquent escrow and escrow distributions include current unpaid
escrow payments, payments that will become due during a workout involving
a trial period if you are eligible, and escrow advances made during
that same period. The current escrow is the escrow portion of your
oldest delinquent payment. The re-analyzed escrow is your future
escrow payment that would be in effect at the completion of a trial plan.
Your insurer allows fees for the current foreclosure or bankruptcy to
be included in your workout. The fees shown above may not be the total
if fees for a previous foreclosure or bankruptcy exist. Delinquent
interest includes current unpaid interest as well as interest to become
due during a workout involving a trial period if you are eligible.
Please refer to page 1 of the Evaluation Notice for the workout offer.

Sincerely,

Njeri Thomas
Loss Mitigation

Evaluation Notice Part 2 TXN





A Division of Alabama Housing Finance Authority

P.O. Box 242928
Montgomery, AL 36124-2928

January 06, 2020

Loan Number ▮▮▮▮▮▮

Payments may be remitted to ServiSolutions, ATTN Loss Mitigation
P.O. Box 242928, Montgomery, Alabama 36124-2928.

| PLAN | DATE | AMT | PLAN | DATE | AMT |
|------|----------|--------|------|----------|--------|
| 01 | 01/10/20 | 500.00 | 02 | 02/10/20 | 500.00 |
| 03 | 03/10/20 | 500.00 | 04 | 04/10/20 | 500.00 |

LM012-3 TXN





*A Division of Alabama Housing Finance Authority*

P.O. Box 242928
Montgomery, AL 36124-2928

January 06, 2020

RE: Loan Number ▮▮▮▮▮▮
Payments Due: August 01, 2019 to January 01, 2020
Amount Due: $ 4,962.14
Late Charges: $ 96.66

I/we understand that we must contact ServiSolutions monthly and update
our financial information. The monthly payment may be adjusted based
on evaluation of new financial information. I/we understand that no late
charges will be assessed while I/we are performing under the terms of
this agreement. All prior fees that were assessed on my account prior
to this agreement will remain due and unpaid unless I/we reinstate
our account or qualify for another Loss Mitigation retention option.

I/we understand all credit reporting will continue based upon my/our
actual due date, and not the due date of this agreement. In addition,
I/we may continue to receive collection letters and/or calls during
this forbearance period.

I/we further understand that this forbearance is considered to have
failed and is deemed broken when I/we vacate or abandon the property,
or I/we allow the forbearance payments to become 60 days past due,
without any advisement to ServiSolutions of any issue(s) that prevent(s)
I/we from complying with this agreement. If I/we advise ServiSolutions
that I/we will no longer seek employment and/or will not honor the
terms of the forbearance agreement. I/we agree to advise ServiSolutions
once I/we find employment and provide a new employer Verification of
Employment and paystubs. I/we also understand that I/we am/are
permitted to pre-pay the mortgage delinquency at anytime. I/we
I/we understand that this agreement will be voided if I/we reinstate
my/our account.

I/we understand that at least 30 days prior to the end of the
Forbearance Plan, I/we will be sent a request for an updated loss
mitigation request for re-evaluation. I/we am/are required to continue
making payments in accordance with the forbearance until I/we are
offered another loss mitigation option. I/we understand that this
agreement can be terminated because of a change in my/our financial
circumstances. I/we agree that if I/we fail to comply with this agreement
and/or submit updated financial information this agreement may be
terminated, and if appropriate, foreclosure will begin.

Please sign and return the original form by January 21, 2020 to
P.O. Box 242967, Montgomery, Alabama 36124-2927. You may retain the
Special Forbearance terms described on page 1 and 3 for your records.
No payments will be accepted until this agreement is returned.

_____          1·8·20
Nicole Winstead                           Date Signed
Borrower Signature


_____          _____
Co-Borrower Signature                     Date Signed

Executed by: _____ on behalf of ServiSolutions _____
Loss Mitigation Technician                                  Date Signed

LM012-2 TXN





P.O. Box 242928
Montgomery, AL 36124-2928

January 06, 2020 *A Division of Alabama Housing Finance Authority*

Nicole Winstead
47 Belmont Dr
Little Rock, AR 72204

Re: Loan No. ▓▓▓▓▓▓

Dear Borrower(s):

Based on a careful review of the information you provided, we are pleased
to inform you of your eligibility to participate in the following program:

FHA 4 month special forbearance

If you would like to participate please sign, date, and return this
letter by January 21, 2020. Upon acceptance, your contact will be Njeri Thomas.

_____     _____     _____     _1.8.20_
Borrower                 Co-Borrower              Non-Owner Occupant        Date

You did not meet FHA eligibility requirements for the following:

1. Informal/Formal Forbearance: Requires that 85% of the surplus income
be sufficient to bring the mortgage current within 6 months.

2. Special Forbearance: You are eligible. Your unemployment status
has been verified and an affordable payment statement has been received.

3. HAMP Standalone Loan Modification: Per FHA's Loss Mitigation Priority
Waterfall, you were not reviewed for this program.

4. HAMP Standalone Partial Claim: Per FHA's Loss Mitigation Option Priority
Waterfall, you were not reviewed for this program.

5. HAMP Loan Modification with a Partial Claim: Per FHA's Loss Mitigation Option Priority
Waterfall, you were not reviewed for this program.

If loss mitigation is not viable, unsuccessful, or denied, or we are unable
to proceed due to your failure to respond to this offer, regular servicing
will continue, including foreclosure if applicable. Your loan could also be
included in a Single Family Loan Sale. Please be advised arrangements are
required to bring other mortgages or fees current prior to finalizing
the workout. Additional criteria and information may be required for a
Pre-Foreclosure Sale including Authorization to communicate with your agent.
***Scheduled foreclosures can only be canceled if a purchase contact
deemed acceptable per your investor's guidelines is received.***

Please contact ServiSolutions with evaluation concerns at 866-339-2432.
If denied retention options following a Special Forbearance, you have
7 days to submit 'additional information that may impact the decision.
We also encourage you to contact a HUD Counselor in your area by
calling 800-569-4287 or by visiting http://www.hud.gov/offices/
hsg/sfh/hcc/fc/. You may access HUD's toll-free number via TTY by
calling the Federal Information Relay Service at (800) 877-8339.

Sincerely,
Loss Mitigation Department
LM021-1  TXN

# EXHIBIT 3



**Kroger**

FRESH FOR EVERYONE.

```
         8415 WEST MARKHAM
         (501) 227-7262
         Your cashier was natasha
MR          WU STAGED MT       NP   500.00
MR          STAGED MT FEE      NP    14.50
            TAX                       0.00
 ****  BALANCE                      514.50
       CASH                         520.00
       CHANGE                         5.50
   TOTAL NUMBER OF ITEMS SOLD =         0
 01/10/20  06:45pm 630 30 115 152

      THANK YOU FOR SHOPPING KROGER
             www.kroger.com
```



WESTERN UNION
P.O. Box 6036,
Englewood, CO 80155

International money transfer services are provided by
two Western Union companies Western Union
Financial Services Inc. ("WUFSI") and Western Union
International Services LLC ("WUIS"). Transfer fees
disclosed above for these services are charged by
WUIG fi os servicios de transferencia de dinero a
nivel internacional son provistos por dos compañías
Western Union Western Union Financial Services,
Inc. ("WUFSI") y Western Union International
Services LLC ("WUIS") Los costos en concepto de
transacciones revelados arriba son cargados por
WUIS

# EXHIBIT 4

April 28, 2020

Mortgage Financial Services
10922 Coursey Blvd, Bldg.B
Baton Rouge, LA 70816

Dear Mortgage Financial Services and Rick Priest,

I hereby attest that I have been indirectly affected by covid -19. Myself and my small business are experiencing financial hardship.

Under the Cares Act (H.R. 748) I am requesting a forbearance on my federally backed mortgage loan.

### SEC. 4022. FORECLOSURE MORATORIUM AND CONSUMER RIGHT TO REQUEST FORBEARANCE.

(a) Definitions.---In this section:

(1) COVID–19 EMERGENCY.---The term "COVID–19 emergency" means the national emergency concerning the novel coronavirus disease (COVID–19) outbreak declared by the President on March 13, 2020 under the National Emergencies Act (50 U.S.C. 1601 et seq.).

(2) FEDERALLY BACKED MORTGAGE LOAN.---The term "Federally backed mortgage loan" includes any loan which is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from 1- to 4- families that is---

(A) insured by the Federal Housing Administration under title II of the National Housing Act (12 U.S.C. 1707 et seq.);

(B) insured under section 255 of the National Housing Act (12 U.S.C. 1715z-20);

(C) guaranteed under section 184 or 184A of the Housing and Community Development Act of 1992 (12 U.S.C. 1715z-13a, 1715z-13b);

*Exhibit 1*

(D) guaranteed or insured by the Department of Veterans Affairs;

(E) guaranteed or insured by the Department of Agriculture;

(F) made by the Department of Agriculture; or

(G) purchased or securitized by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association.

(b) Forbearance.—

(1) IN GENERAL.— During the covered period, a borrower with a Federally backed mortgage loan experiencing a financial hardship due. directly or indirectly. to the COVID–19 emergency may request forbearance on the Federally backed mortgage loan. regardless of delinquency status, by—

(A) submitting a request to the borrower's servicer; and

(B) affirming that the borrower is experiencing a financial hardship during the COVID–19 emergency.

(2) DURATION OF FORBEARANCE.—Upon a request by a borrower for forbearance under paragraph (1). such forbearance shall be granted for up to 180 days. and shall be extended for an additional period of up to 180 days at the request of the borrower. provided that, at the borrower's request, either the initial or extended period of forbearance may be shortened.

(3) ACCRUAL OF INTEREST OR FEES.—During a period of forbearance described in this subsection. no fees, penalties. or interest beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract, shall accrue on the borrower's account.

(c) Requirements For Servicers.—

(1) IN GENERAL.—Upon receiving a request for forbearance from a borrower under subsection (b). the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID–19 emergency and with no fees. penalties. or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage

contract) charged to the borrower in connection with the forbearance, provide the
forbearance for up to 180 days, which may be extended for an additional period of up to 180
days at the request of the borrower, provided that, the borrower's request for an extension is
made during the covered period, and, at the borrower's request, either the initial or extended
period of forbearance may be shortened.

Sincerely,

Nicole Winstead

47 Belmont Dr
Little Rock, AR 72204.

(501) 707-5695

7018 3090 0000 5624 8199

# EXHIBIT 5

## NISWANGER LAW FIRM PLC

Centre Place Building
212 Center Street, 6th Floor
Little Rock, AR 72201

Stephen B. Niswanger
steve@niswangerlawfirm.com

Telephone (501) 353-1158
Facsimile (501) 421-3651

May 12, 2020

Nicole Winstead
47 Belmont Dr.
Little Rock, AR 72204

     RE:   Loan # ███████

Dear Ms. Winstead:

As you may know, I represent Mortgage Financial Services, LLC with respect to its rights and remedies against you concerning a Note dated May 24, 2019, and a Mortgage recorded on May 30, 2019, as instrument no. 2019033374. We are in receipt of your letter dated April 28, 2020, requesting a forbearance under the new CARES Act. However, this mortgage loan is no longer a federally backed mortgage loan subject to the CARES Act. So, my client denies your request for a forbearance. So, as stated in my letter to you dated May 1, 2020, if you fail to pay to my client the sum of $114,391.10, or make other arrangements satisfactory to my client, by the close of business on May 31, 2020, my client will authorize me to commence litigation against you,

This firm is a debt collector attempting to collect a debt, and any information obtained will be used for that purpose. Please refer to my letter to you dated May 1, 2020, for additional information concerning this loan account.

Sincerely,

NISWANGER LAW FIRM PLC

Stephen B. Niswanger

SBN/sn

cc:   Rick Priest (via email)
      Konnie Wren (via email)

Exhibit 2

# EXHIBIT 6

**2022005463**
**PULASKI CO. AR FEE $35.00**
PRESENTED
**1/21/2022 1:39:33 PM**
RECORDED
**01/21/2022 02:15:13 PM**
TERRI HOLLINGSWORTH
Circuit / County Clerk
BY: DEBORAH ABRAMOVITZ
DEPUTY RECORDER



(this space left for blank for recording)

INSTRUMENT PREPARED BY.
ALBERTELLI LAW
1 INFORMATION WAY, STE 201
LITTLE ROCK, AR 72202
(501) 406-0855
A LAW NO · 22-000105

## LIMITED POWER OF ATTORNEY

WHEREAS on May 24, 2019, Nicole Winstead, an unmarried woman, executed a Mortgage in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Mortgage Financial Services, LLC. Said Mortgage was recorded on May 30, 2019, as instrument number 2019033374 in the real property records of Pulaski County, Arkansas.  The Mortgage was subsequently assigned to Mortgage Financial Services, LLC by virtue of an assignment dated December 22, 2021, and recorded on January 14, 2022, as instrument number 2022003464 in the real property records of Pulaski County, Arkansas.

W H ER EAS, a default occurred under the terms of the Note and indebtedness, the undersigned having declared immediately due and payable the total amount of the un-matured principal and accrued interest owing under the Note and all indebtedness secured by the Mortgage and has therefore elected to exercise its power of sale thereunder and pursuant to Ark. Code Ann. Section 18-50-115.

NOW, THEREFORE, pursuant to Ark. Code Ann. Section 18-50-101 et seq. as amended under Act 983 of 1999 on March 31, 1999, the undersigned does hereby request and appoint Albertelli Law, to act on, and with the consent, powers, duties, rights and authority of the Mortgagee; and, further the undersigned does hereby ratify and confirm any and all actions taken on its behalf by the attorney-in-fact herein prior to the recording of this limited power of attorney.  This Limited Power of Attorney shall remain in force and effect, notwithstanding whether the Note secured by the subject Mortgage is accelerated or reinstated, until revoked in writing by Mortgagee pursuant to an instrument filed in the office of the Circuit Clerk of Pulaski County, Arkansas.

IN WITNESS WHEREFORE, the undersigned has executed these presents this ___20___ day of
___January___, 20__22__ .

Mortgage Financial Services, LLC
by ServiceMac, LLC, its appointed
Attorney in Fact

By: _____

Its: <u>VP, Foreclosure and Bankruptcy</u>

**ACKNOWLEDGEMENT**

STATE OF South Carolina     §
COUNTY OF Lancaster       §

BEFORE ME, the undersigned notary public of the State and County aforesaid, on this day personally appeared_____ Sally Dengler _____ _____, Authorized Signer for Mortgage Financial Services, LLC, by ServiceMac, LLC, its appointed Attorney in Fact, known to me, or otherwise provided sufficient evidence showing himself/herself to be the person whose name is subscribed to the foregoing instrument, and who acknowledged to me that he/she executed the same for the purposes and consideration therein expressed and in the capacity herein stated.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal this ___20___ day of
___January___, 2022___ .

Notary Public

# EXHIBIT 7



MORTGAGE
FINANCIAL SERVICES

P.O. Box 100077                                                                                    Tel:

Duluth, GA 30096

01/28/2022

NICOLE WINSTEAD
47 BELMONT DR
LITTLE ROCK, AR  72204                           Loan #: ███████
                                                 Property:  47      BELMONT DR
                                                            LITTLE ROCK, AR 72204

RE: **Notice of Incomplete Application for Loss Mitigation Program**

Dear NICOLE WINSTEAD ,

Thank you for your interest in our Loss Mitigation Program. We acknowledge receipt of the information and/or documentation you provided in support of your loss mitigation application.  Based on our preliminary review of the documents you submitted, we have determined that your loss mitigation application is incomplete at this time and that supplemental information is needed to process your request.

The following items are still outstanding:

**General:**

- Please complete, sign, date and return the Request for Transcript of Tax Return (IRS Form 4506-C) for each borrower (borrowers who filed their tax returns jointly may send in one IRS Form 4506-C signed and dated by both of the joint filers).
- Please provide a written explanation describing the details of the hardship and relevant documentation

**NICOLE WINSTEAD:**

- Please return the two most recent bank statements showing self-employed income deposit amounts or most recent signed and dated quarterly or year-to-date profit/loss statement or most recent complete and signed business tax return or most recent complete and signed individual federal income tax return.

If a 4506-T form is needed and you need another copy, it can be obtained by going to http:www.irs.gov/ and typing 4506-T in the search window.

You may send these missing items to our Processing Team using any one of the following methods:

- Mail at Mortgage Service Center, P.O. Box 100077, Duluth, GA 30096
- Uploading your documents after registration at https://www.loansolutioncenter.com

Upon receipt of all documents and information, we will continue evaluating your request for assistance.  We ask that you send these documents to us no later than 02/11/2022.  Once we receive your information/documentation and deem your application complete, a decision on your application will be made within 30 days of receipt of a complete package.

If you are not able to gather all of the information requested, or will not be able to provide all of this documentation and information to us by 02/11/2022 please contact us immediately at . If you prefer you may also reach out to a HUD-approved counselor to assist you in completing your package. To find a counselor in your area please go to https://www.hud.gov/i_want_to/talk_to_a_housing_counselor or call (800) 569-4287 .Further help can be found on the Consumer Financial Protection Bureau's website at https://www.consumerfinance.gov/mortgagehelp/ or by calling (855) 411-2372.

As of 01/28/2022 the following documents have been received:

If you believe that this list is not accurate, please contact *us* at .

If all of the required documentation to complete your package is not submitted timely, you may be ineligible or denied for a Loss Mitigation Program (foreclosure prevention alternative) and foreclosure proceedings may continue, including referral to foreclosure if not currently referred. If we are in receipt of your complete loss mitigation application within 37 days of a scheduled foreclosure sale, we will make every effort to expedite the review of your package prior to the scheduled foreclosure sale but it is not guaranteed unless required by local law.

Please understand that all collection/foreclosure activity initiated will continue so long as your loss mitigation application remains incomplete.  If the information or documentation requested is not timely provided, there is no guarantee that we will be able to evaluate you for alternatives to foreclosure and suspend foreclosure proceedings if referred to foreclosure.

Foreclosure initiation/filing will not occur when reviewing a complete application or if an offer is extended for a loss mitigation solution and the response time for acceptance has not expired. If a complete package is received after the initiation of foreclosure proceedings, those proceedings will be suspended while we evaluate a request for a Loss Mitigation Program.

If you have other mortgages on this property, you should consider contacting the servicer of such mortgage loans to discuss available loss mitigation options.

We may order an appraisal to determine the property value and charge you for the appraisal. We will promptly give you a copy of any appraisal, even if we are unable to offer you a loss mitigation option. You can pay for an additional appraisal for your own use at your own cost.

Please contact me with questions that you may have specific to your account or this letter.  My direct contact number is .

Sincerely,

Iman Mansoor
Single Point of Contact

Rev. 5-18-2020

Mortgage Financial Services principal place of business is located at 9726 Old Bailes Road, Suite 200, Fort Mill SC  29707 and can be reached at 866-978-2622.  NMLS ID: 1687766

**Important Information for Debtors in Default or Bankruptcy**
This communication is from a debt collector.  This is an attempt to collect a debt.  Any information obtained will be used for that purpose.  However, to the extent your original obligation has been discharged or is subject to an automatic stay under the United States Bankruptcy Code, this notice is for compliance and/or informational purposes only and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

**Attention Servicemembers and Dependents**
Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA) regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. Servicemembers and dependents with questions about the SCRA should contact their unit judge advocate or installation legal assistance officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil; 1-800-342-9647) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil), and through HUD-certified housing counselors (http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm).

**Requests for Information and Notices of Error including Qualified Written Request**
You have certain rights under federal law related to resolving errors in the servicing of your loan, requesting information about your loan account, and submitting a qualified written request as defined under federal law. Please send a request for information or notice of an error to the following correspondence address at 9726 Old Bailes Road, Suite 200, Fort Mill SC 29707.

**Credit Reporting Notice**
We may report information about your account to credit bureaus.  Late payment, missed payments, or other defaults on your account may be reflected in your credit report.

**Credit Reporting Dispute Notice Requirements**
You have the right to dispute Credited Bureau Reporting information by sending a letter to our correspondence address at:
Mortgage Financial Services
P.O. Box 100081
Duluth, GA 30096

Rev. 5-18-2020

**Information about Mortgage Counseling or Assistance**
For help exploring options, the Federal government provides contact information for housing counselors, which you can access by contacting the Consumer Financial Protection Bureau at www.consumerfinance.gov/find-a-housing-counselor or obtain no-cost assistance by contacting the Department of Housing and Urban Development at www.hudgov/offices/hsg/sfh/hcc/hcs.cfm or by calling 1-800-569-4287.

**FNMA Know Your Options**
If the investor of your loan is Fannie Mae, go to https://www.knowyouroptions.com/ for a list of available options.

**Colorado Property Owners**
Mortgage Financial Services maintains a local office at 1776 S. Jackson Street, Suite 900, Denver, CO 80210.  The office's phone number is 888-499-9642.

**Hawaii Property Owners**
Mortgage Financial Services is the party responsible for the servicing of your mortgage loan which includes the collection of payments on your account.  Mortgage Financial Services principal place of business is located at 9726 Old Bails Road, Suite 200, Fort Mill SC  29707.

**Massachusetts Property Owners**
You may contact Mortgage Financial Services at 866-978-2622 from 8:30am-8:00pm EST Monday through Friday and 9:00am-3:00pm EST on Saturdays.

NOTICE OF IMPORTANT RIGHTS:
YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POSTMARKED OR DELIVERED WITHIN SEVEN DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

**Minnesota Property Owners**
Mortgage Financial Services is a licensed Collection Agency by the Minnesota Department of Commerce.

**New York Property Owners**
**City of Yonkers** - Mortgage Financial Services is a licensed Collection Agency by the City of Yonkers:  10071.
For questions regarding this matter, please call SPOC at 866-978-2622
**City of Buffalo** - Mortgage Financial Services is a licensed Collection Agency by the City of Buffalo: CAG18-10043707

**North Carolina Property Owners**
Mortgage Financial Services is a licensed Collection Agency by the state of North Carolina, issued Debt Collection Permit #113569, located at 9726 Old Bailes Road, Suite 200, Fort Mill SC 29707.

Rev. 5-18-2020

**Oregon Property Owners**
Residential mortgage loan servicers are regulated by the Oregon Division of Financial Regulation. To file a complaint, call (888) 877-4894 or visit http://dfr.oregon.gov.

**Tennessee Property Owners**
Mortgage Financial Services is licensed by the collection service board of the department of commerce and insurance.

**Texas Property Owners**
COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR BOULEVARD, SUITE 201, AUSTIN TX  78705.  A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the Department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

**Utah Property Owners**
As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

Rev. 5-18-2020

# EXHIBIT 8



**Columbus**  |  **Cincinnati**  |  **Cleveland**  |  **New Jersey**  |  **New York**



Dann
Law

216-373-0539                          notices@dannlaw.com                          216-373-0536
*Main Office Telephone*                    *Office-Wide Email*                              *Fax*

Tuesday, March 8, 2022

Mortgage Financial Services, LLC*
10922 Coursey Blvd Ste B
Baton Rouge, LA 70816

*\*Sent via Certified Mail [Tracking No. 7021 2720 0000 5705 5056 ]*
*\*\*If responding to this correspondence by email, please send to notices@dannlaw.com*

**In the Matter of:**

 Borrower's Name:  Nicole Winstead
 Property Address:  47 Belmont Dr., Little Rock, AR 72204
 Mortgage Account No.: ▮▮▮▮▮▮▮

**Re: Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to honor the terms of or otherwise implement or give effect to a loss mitigation plan; notice of errors pursuant to 12 C.F.R. § 1024.35(b)(5) for imposition of fees for which there was no reasonable basis to impose; request for information pursuant to 12 C.F.R. § 1024.36**

Dear Sir or Madam:

This is a notice of error under 12 C.F.R. §1024.35 of Regulation X of the Mortgage Servicing Act under the Real Estate Settlement Procedures Act (RESPA). The written authority of the above-referenced borrower (the "Borrower") authorizing our law firm to send this notice on her behalf concerning the above-referenced loan (the "Loan") is enclosed and incorporated herein by reference. Mortgage Financial Services, LLC ("MFS") must send written notice acknowledging receipt of this notice *within five (5) business days*. *See* 12 C.F.R. §§ 1024.35(d) and 1024.36(c). MFS must respond to this notice *within thirty (30) business days* of receipt. *See* 12 C.F.R. §§§ 1024.35(e)(3)(i)(C) and 1024.36(d)(2)(i)(B); *see also* 12 U.S.C. § 2605(k)(1)(C).

**Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to honor the terms of or otherwise implement or give effect to a loss mitigation plan:**

On or about January 6, 2020, the prior servicer of the Loan, ServiSolutions, sent a correspondence to the Borrower indicated that after reviewing the Borrower's loss mitigation application that she had been approved for "UNEMPLOYMENT SPECIAL FORBEARANCE" also identified as an "FHA 4 month special forbearance" (the "Agreement"). *A copy of such correspondence along with the terms of the Agreement are enclosed for your reference.*

March 8, 2022
Page 2



Pursuant to the terms of the Agreement, the Borrower was to remit four (4) payments, each in the amount of $500.00, on the 10th day of the month for the months of January through April.

The Borrower executed and accepted the Agreement on January 8, 2020 and remitted the first payment due thereunder. *A receipt for proof of such payment is enclosed for your reference.*

The Borrower was advised by ServiSolutions in January 2020 that servicing of the Loan was transferring to MFS effective on or around February 1, 2020 and that the Borrower would receive correspondence with the details pertaining to the same from MFS—the Borrower has not received a copy of any such correspondence to date.

MFS on numerous occasions has stated that it would not honor the terms of the Agreement or of any other forbearance.

MFS's failure to honor or otherwise implement or give effect to the Agreement, as described, *supra*, constitutes one (1) or more errors related to the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11).

MFS's errors have and continue to cause real, legitimate harm to the Borrower including perpetuating and otherwise exacerbating an unnecessary default on the Loan and subsequently being charged for further fees, costs, and expenses related to such default and subsequent foreclosure proceedings. Moreover, due to MFS's actions in refusing to honor the Agreement and in otherwise refusing to engage in any loss mitigation review of the Loan, the Borrower remains in imminent fear of losing her home to foreclosure as a foreclosure sale of the Home has been scheduled for March 21, 2022. This is not an exhaustive list of the damages the Borrower has suffered but is more so to place MFS on notice that its improper actions have had a tangible negative impact on the Borrower.

**Errors pursuant to 12 C.F.R. § 1024.35(b)(5) for imposition of fees for which there was no reasonable basis to impose:**

It is an error for a servicer to impose a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower. *See* 12 C.F.R. § 1024.35(b)(5). Comment 2 of the Official Interpretations of the Consumer Financial Protection Bureau of 12 C.F.R. § 1024.35(b) provides that:

> For purposes of § 1024.35(b)(5), a servicer lacks a reasonable basis to impose fees that are not bona fide, such as:
> i. A late fee for a payment that was not late;
> ii. A charge imposed by a service provider for a service that was not actually rendered;
> iii. A default property management fee for borrowers that are not in a delinquency status that would justify the charge; or

March 8, 2022
Page 3



    iv. A charge for force-placed insurance in a circumstance not permitted by
        § 1024.37.

Supplement I to Part 1024.

Despite the Borrower's acceptance of and performance under the Agreement, MFS has refused to honor the same and has subsequently imposed fees, costs, and other charges related default servicing against the Borrower and the Loan. For example, MFS imposed multiple fees for "FCL ATTY FEE" and "APPRAISAL" as evidenced by the Mortgage Statement dated February 16, 2022.

On information and belief, MFS has charged other such fees since obtaining servicing rights to the Loan and continues to impose further such improper fees.

Each such fee would be wholly improper as any continued default or delinquency is the direct result of the errors committed by MFS in refusing to honor the Agreement or otherwise engage in loss mitigation activities. *See supra.* It is wholly unjust for MFS to impose fees against the Borrower for a delinquency that was perpetuated due to MFS's actions.

MFS's actions, in imposing these fees for which MFS has no reasonable basis to impose or collect, <u>constitute at least one (1) error</u> in the servicing of the Loan—but likely more—pursuant to 12 C.F.R. § 1024.35(b)(5), one (1) such error for each improper fee or charge imposed.

Should MFS impose any further charges or fees otherwise on the Loan stemming from MFS's wrongful actions, each such fee shall constitute an additional error pursuant to 12 C.F.R. § 1024.35(b)(5).

**Request for information pursuant to 12 C.F.R. § 1024.36:**

Please provide the following information pursuant to 12 C.F.R. § 1024.36:

1. A copy of any correspondence MFS sent to the Borrower since the origination of the Loan advising that servicing rights to the Loan transferred along with proof of delivery of the same to the Borrower; and,
2. A copy of any correspondence MFS sent to the Borrower since the origination of the Loan advising that ownership of the Loan transferred or that the Loan had otherwise been assigned, purchased, or sold to another entity, along with proof of delivery of the same to the Borrower.

**Conclusion and Requested Actions:**

MFS committed at least two (2) errors related to the servicing of the Loan.

---

March 8, 2022
Page 4



Please correct these errors as requested and provide us with notification of the correction, the date of the correction, and contact information for further assistance; or, after conducting a reasonable investigation, provide the Borrower with a notification that includes a statement that you have determined that no such error occurred, a statement of the reason(s) for this determination, a statement of the Borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the Borrower can request such documents, and contact information for further assistance.

Best regards,

Karen Ortiz

Enclosures



Cleveland | Columbus | Cincinnati | New Jersey | New York


**Dann Law**

Telephone: 216-373-0539
Facsimile: 216-373-0536
Email: Notices@DannLaw.com

In the Matter of:
Borrower(s):  **Nicole Winstead**

Property Address:  47 Belmont Dr Little Rock, AR 72204

Mortgage Loan No.:  ▮▮▮▮▮▮▮▮

**Re:    Written Consent/Authorization for Requests for Information & Notices of Error**

To Whom It May Concern:

I/We, the borrower(s), do hereby authorize and provide our written consent and authorization for Mortgage Financial Services, llc the Servicer of the above-referenced loan, to fully cooperate with, comply with, and provide any and all information requested or demanded by and through any and all Requests for Information and/or Notices of Error pertaining to our loan, pursuant to the Real Estate Settlement and Procedures Act (Regulation X) and/or the Truth in Lending Act (Regulation Z) which may be sent by Attorneys on our behalf. Said counsel represents us in any and all pending or contemplated legal matters concerning the above-referenced loan. Please respond to any and all such Requests and Notices at the following address:

DannLaw
15000 Madison Ave., Lakewood, OH 44107

02 / 18 / 2022
Signed: _____ *Nicole Winstead* _____   Date: _____

Print Name: _Nicole Winstead_____

Mailing Address
15000 Madison Ave.
Lakewood, OH 44107

DannLaw.com
[877] 475-8100

Doc ID: 81714416b74f5ed104310533 1f1329529ddf04aa

# USPS Tracking®

FAQs >

## Track Another Package +

**Tracking Number:** 70212720000057055056                                    Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 2:47 pm on March 14, 2022 in BATON ROUGE, LA 70816.

**USPS Tracking Plus® Available** ⌄

# ⊘ Delivered, Front Desk/Reception/Mail Room

March 14, 2022 at 2 47 pm
BATON ROUGE, LA 70816

Feedback

**Get Updates** ⌄

---

**Text & Email Updates**                                                          ⌄

---

**Tracking History**                                                              ⌃

**March 14, 2022, 2:47 pm**
Delivered, Front Desk/Reception/Mail Room
BATON ROUGE, LA 70816
Your item was delivered to the front desk, reception area, or mail room at 2:47 pm on March 14, 2022 in BATON ROUGE, LA 70816.

---

**USPS Tracking Plus®**                                                           ⌄

---

USPS.com® - USPS Tracking® Results

**Product Information** 

**See Less** ⌃

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Feedback

# EXHIBIT 9



**Columbus   |   Cincinnati   |   Cleveland   |   New Jersey   |   New York**



| 216-373-0539 | notices@dannlaw.com | 216-373-0536 |
| *Main Office Telephone* | *Office-Wide Email* | *Fax* |

March 8, 2022

Mortgage Financial Services, LLC
10922 Coursey Blvd Ste B
Baton Rouge, LA 70816

*\*Sent via Certified Mail return receipt requested [7021 2720 0000 5705 5070]*

**In the Matter of:**

> Borrower's Name:    Nicole Winstead
> Property Address:    47 Belmont Dr., Little Rock, AR 72204
> Mortgage Account No.:

**\*\*If responding to this correspondence by e-mail, please send to _notices@dannlaw.com_**

**Re: Request for Information Pursuant to 12 C.F.R. § 1024.36**

Dear Sir or Madam:

This is a Request for Information related to your servicing of the above-referenced mortgage loan. All references herein are to Regulation X of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd Frank Act. The written authority of the above-referenced borrower (the "Borrower") for this request to our law firm is enclosed.

Pursuant to 12 C.F.R. § 1024.36(c), you must provide our office with a written response acknowledging your receipt of this request *within five (5) business days* of such. Pursuant to 12 C.F.R. § 1024.36(d)(ii)(2)(B), you must provide the information requested herein, *infra, within thirty (30) business days* of your receipt of this request.

Please provide the following information within the time periods noted herein:

1. An exact reproduction of the life of loan mortgage transaction history for this loan from the contract system of record from your electronic software program for this loan. For purposes of identification, the life of loan transaction history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transaction history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short



Page 2

description for each such code.

2. Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan from January 10, 2014.

3. Copies of any and all broker's price opinions you performed or otherwise obtained for the above-referenced property in relation to the above-referenced mortgage loan.

4. A true and accurate copy of the original note related to the above-referenced mortgage loan.

5. A detailed copy of your last two (2) analyses of the escrow account of the mortgage.

6. A copy of an accurate and up-to-date itemized reinstatement quote and/or itemized reinstatement letter showing the exact amount needed to cure any default or delinquency on the above-referenced loan as well as a date through which such amount is to remain good and valid.

7. Each date upon which you received a loss mitigation application, whether complete or incomplete, from the Borrower regarding the Loan from January 10, 2014 to the present. Please note that, pursuant to 12 C.F.R. § 1024.41(b)(1), a "complete loss mitigation application" is defined as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."

8. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(b)(2)(i)(B) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrower notifying the Borrower as to whether any submitted loss mitigation application was complete or incomplete, and if incomplete, stating what documentation and/or information was necessary to complete such application.

9. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(c)(1)(ii) regarding the Loan from January 10, 2014 to the present. In other words, please provide a copy of any written correspondence you sent to the Borrower notifying the Borrower as to which loss mitigation options, if any, you would offer the Borrower on behalf of the owner or assignee of the mortgage.

10. A copy of all trial period payment plans, loan modification agreements, or loss



Page 3

mitigation agreements otherwise that you have offered to the Borrower, regardless of whether they were accepted or rejected by the Borrower.

11. Each date upon which you received an executed loss mitigation agreement from the Borrower regarding the Loan from January 10, 2014 to the present.

12. Each date upon which you received or otherwise came into possession of an appeal of loss mitigation eligibility from the Borrower regarding the Loan from January 10, 2014 to the present.

13. A copy of any written correspondence that you sent to the Borrower pursuant to or otherwise in compliance with 12 C.F.R. § 1024.41(h)(4) regarding the Loan from January 10, 2014 to the present. In other words, provide a copy of any written correspondence you sent to the Borrower stating your determination of whether you would offer the Borrower a loss mitigation option based upon an appeal of your denial of the Borrower's eligibility for any loss mitigation option.

Best Regards,

Karen Ortiz

Karen Ortiz

Enclosure



Cleveland   |   Columbus   |   Cincinnati   |   New Jersey   |   New York



Telephone: 216-373-0539
Facsimile: 216-373-0536
Email: Notices@DannLaw.com

In the Matter of:
Borrower(s):   __Nicole Winstead_____

Property Address:   __47 Belmont Dr Little Rock, AR 72204_____

Mortgage Loan No.: __████████_____

Re:   **Written Consent/Authorization for Requests for Information & Notices of Error**

To Whom It May Concern:

I/We, the borrower(s), do hereby authorize and provide our written consent and authorization for _Mortgage Financial Services_, the Servicer of the above-referenced loan, to fully cooperate with, comply with, and provide any and all information requested or demanded by and through any and all Requests for Information and/or Notices of Error pertaining to our loan, pursuant to the Real Estate Settlement and Procedures Act (Regulation X) and/or the Truth in Lending Act (Regulation Z) which may be sent by Attorneys on our behalf. Said counsel represents us in any and all pending or contemplated legal matters concerning the above-referenced loan. Please respond to any and all such Requests and Notices at the following address:

DannLaw
15000 Madison Ave., Lakewood, OH 44107

Signed: _____*Nicole Winstead*_____   Date: 02 / 18 / 2022

Print Name: __Nicole Winstead_____

Doc ID: 81714416b74f5ed1043105331f1329529ddf04aa

7021 2720 0000 5705 5070



**CERTIFIED MAIL**



7021 2720 0000 5705 5070
7021 2720 0000 5705 5070

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery $

Postage
$

Total Postage and Fees
$

Mortgage Financial Services, LLC*
10922 Coursey Blvd Ste B
Baton Rouge, LA 70816

PS Form 3800, April 2015  PSN 7530-02-000-9047   See Reverse for Instructions

# EXHIBIT 10



**MORTGAGE**
FINANCIAL SERVICES

P.O. Box 100081
Duluth, GA 30096-9377

April 22, 2022

Dann Law
ATTN: Karen Ortiz
15000 Madison Ave.
Lakewood, OH 44107

Loan Number:
Regarding: Nicole Winstead

Dear Karen Ortiz,

Thank you for reaching out to us to review and assist with your concerns. We have completed our research and have provided our response below to the concerns outlined in your email correspondence.

Please find the responses to request for information and documentation below.

On January 28, 2022, we received an incomplete loss mitigation packet from the borrower. On January 31, 2022 and February 16, 2022, the single point of contact (SPOC) spoke to the borrower and discussed the items missing from the package. On February 16, 2022, we received additional documentation; however, the documentation did not comply with the requirements needed to proceed with Loss Mitigation efforts.

The following documents are enclosed as requested:
- o A complete payment history which lists the dates and amounts of all the payments made on the loan to date.
  - This includes a breakdown of the amount of all fees and charges currently due, i.e. late fees, foreclosure costs, attorney fees, inspection fees. Note that the recipient of the foreclosure costs was Albertelli Law Firm.
  - This includes a breakdown of the amount of all escrow items paid. Note that the escrow items were paid to the county and insurance company(s).
- o A copy of the Note
- o A copy of the Escrow Analysis dated on March 17, 2022
- o A copy of the Deed of Trust
- o A copy of the Servicing Transfer Letter dated October 28, 2021
- o A copy of the Missing Docs Letter
- o A copy of the Review Determination Letter
- o A copy of the Loss Mitigation Options Letter
- o A copy of Loss Mitigation Options Letter

We have requested reinstatement quote to be sent.  Please note this statement is being sent separately.

For any additional documents requested or errors that are in dispute before the loan servicing transfer on November 18, 2021, you will need to contact previous sub-servicers.

> Prior Sub-servicer:   Mortgage Financial Services, LLC
> Phone:  (855)812-5010
> Mailing address: 2001 Lakeside Parkway
> Flower Mound, TX 75028

*The remaining items requested are considered proprietary, confidential, privileged or irrelevant to the servicing of this mortgage loan in accordance with federal law, 12 CFR 1024.36(f).*

**Contact Us**
Please contact us at (855) 812-5010 Monday through Friday from 8:30 AM to 8:00 PM and Saturday 9:00 AM to 3:00 PM ET with any questions. You can also reach us via email at support@mymortgagefinancial.com.

Sincerely,

*Katelyn*

Katelyn
Customer Experience Team
Mortgage Financial Services
NMLS 43021

Enclosures

**Important Information for Debtors in Default or Bankruptcy**

We may be considered to be a debt collector under certain state and federal laws. Accordingly, for the purposes of such laws, this communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose. However, to the extent your original obligation has been discharged or is subject to an automatic stay under the United States Bankruptcy Code, this notice is for compliance and/or informational purposes only and does not constitute a demand for payment or an attempt to impose personal liability for such obligation.

**Information for Servicemembers and their Dependents**

The Servicemembers Civil Relief Act may offer protection or relief to military members who have been called to active duty. If either you have been called to active duty or you are the spouse, registered domestic partner, partner in a civil union, or financial dependent of a person who has been called to active duty, and you have not yet made us aware of your status, please contact Customer Service at (855) 812-5010.

# EXHIBIT 11



PO Box 100081 Duluth, GA 30096

8-834-02773-0000520-002-1-000-000-000-000
Nicole Winstead
317 Fountain Ave
Little Rock AR 72205

**MORTGAGE SERVICING TRANSFER NOTICE**

The Servicing of Your loan is transferring on 11/18/2021.

PROPERTY ADDRESS:
47 Belmont Drive
Little Rock,AR 72204

CURRENT LOAN NUMBER: ███████
NEW LOAN NUMBER: ███████

https://mortgagefinancial.com/mfs-payments/

Date December 1, 2021

Dear Nicole Winstead,

On 11/18/2021, the servicing provider of your mortgage loan will transfer from Mortgage Financial Services, LLCto MORTGAGE FINANCIAL SERVICES, LLC, subserviced by ServiceMac, LLC. We are excited to have you as a MORTGAGE FINANCIAL SERVICES, LLC customer and want to make this transition as easy as possible for you. This letter explains what you should know about the transfer of servicing and how MORTGAGE FINANCIAL SERVICES, LLC will help you manage your loan going forward. Please review carefully and retain for your records.

What Is Changing?

Your Loan Number: When the servicing of your loan transfers, effective 11/18/2021, your loan number will change to
████████

Where You Make Your Payment: The last day that Mortgage Financial Services, LLC will accept your mortgage payment is November 17, 2021. Beginning 11/18/2021, you will send your mortgage payment to Fairway Independent Mortgage Corporation. As of December 1, 2021, the principal balance of your loan is $109,203.34 with an escrow balance of $0.00.

Payments and Other Considerations

Payment Protections with a transfer: Under federal regulations, you receive protection from late charge assessments and negative credit bureau reporting for sixty (60) days after the servicing transfer date. You will find additional information on this topic in the "Important Legal Information" section further below.

Online Bill Pay Alert: If you have initiated the process to make your monthly loan payments using an online bill pay service or online banking, please change the bill provider name (payee) to MORTGAGE FINANCIAL SERVICES, LLC the account number (to your new loan number) and the address to PO Box 105178 Atlanta, GA 30348-5178 to continue to make payments. If these changes are not made, there will be a delay in the processing of your payment.

Online and mobile account access:

- If you are currently enrolled in paperless statements (electronic statements), MORTGAGE FINANCIAL SERVICES, LLC would like to continue to send electronic communications. You will need to enroll in MORTGAGE FINANCIAL SERVICES, LLC 's online customer portal.

- Manage your account online through our customer portal at https://mortgagefinancial.com/mfs-payments/. Select "Register". You will be prompted to enter information and will be guided through the remaining steps.

- To download our mobile app, go to the apple or google play store and search MyServiceMac. Enroll to view up to date information and manage account information.

- Setting up account alerts can help you stay on top of important events.

**Optional Products:** If you have mortgage, life, or disability insurance or any other type of optional insurance, premiums will not be transferred to MORTGAGE FINANCIAL SERVICES, LLC, and the insurance will be discontinued. Please contact the provider of the optional insurance or membership product(s) directly regarding your continuation privileges, if applicable.

**Lender Placed Insurance Policies:** If we have placed insurance on your mortgage loan (due to missing or insufficient coverage), this policy will be canceled at servicing transfer and our new servicing center will contact you in writing regarding placing new coverage on your loan.

**Insurance Mortgagee Clause:** MORTGAGE FINANCIAL SERVICES, LLC will notify your homeowners, hazard, and flood insurance company of your new loan number and to change your mortgagee clause to the following address:

> Mortgage Financial Services, LLC
> ISAOA, ATIMA
> P.O. Box 29411
> Phoenix, AZ 85038-9411

**Year-End Statements:** Next year you *may* receive two, year-end statements. You will need to add the amounts on both statements to get the total amount of taxes and interest you paid for the year for tax reporting purposes.

Except for the above changes related to the servicing of your mortgage loan, the transfer of servicing does not affect any term or condition of your loan.

Again, welcome to MORTGAGE FINANCIAL SERVICES, LLC! We are here to assist you and help you through this transition.

Sincerely,

MORTGAGE FINANCIAL SERVICES, LLC
Customer Experience Team
NMLS# 43021

| Payment Addresses and Contact Information | | |
|---|---|---|
| | MORTGAGE FINANCIAL SERVICES, LLC | MORTGAGE FINANCIAL SERVICES, LLC |
| Send Payments to: | Please see the last mortgage statement that you received from your current subservicer, for payment information. | MORTGAGE FINANCIAL SERVICES, LLC PO Box 105178 Atlanta, GA 30348-5178 |
| Contact for questions, including questions about this transfer: | MORTGAGE FINANCIAL SERVICES, LLC 855-812-5010, Monday through Friday 08:30AM to 08:00PM; Saturday 09:00AM to 03:00PM Eastern time. | MORTGAGE FINANCIAL SERVICES, LLC Customer Experience Toll Free 855-812-5010 Monday through Friday 8:30 AM to 8:00 PMand Saturday 9:00 AM to 3:00 PM ET |
| Send written correspondence to: | MORTGAGE FINANCIAL SERVICES, LLC 2001 Lakeside Parkway Flower Mound, TX 75028 | MORTGAGE FINANCIAL SERVICES, LLC PO Box 100077 Duluth, GA 30096 |

REPRESENTATION OF PRINTED DOCUMENT

# Important Legal Information

ServiceMac, LLC (NMLS #1687766) provides certain mortgage servicing functions and services on behalf of MORTGAGE FINANCIAL SERVICES, LLC (NMLS# 43021). For more information regarding ServiceMac, LLC including licensing and other legal information, please visit www.myservicemac.com.

Information about the service transfer of your loan
Under federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Notices of Errors and Requests for Information
You have certain rights under federal law related to resolving errors in the servicing of your loan or requesting information about your loan account. If you want to send a Notice of Error or a Request for Information as defined by federal law, it must be sent to our exclusive address at MORTGAGE FINANCIAL SERVICES, LLC, PO Box 100078 Duluth, GA 30096.

Information for Servicemembers and their dependents
The Servicemembers Civil Relief Act may offer protection or relief to military members who have been called to active duty. If you have been called to active duty or you are the spouse, registered domestic partner, partner in a civil union, or financial dependent of a person who has been called to active duty, and you have not yet made us aware of your status, please contact Customer Service at 855-587-2456.

Successors in Interest
A Successor in Interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact us by phone at 855-587-2456, mail at MORTGAGE FINANCIAL SERVICES LLC, PO Box 100078 Duluth, GA 30096 or email us at support@mymortgagefinancial.com to start the confirmation process.

REPRESENTATION OF PRINTED DOCUMENT



# ServiceMac, LLC

# Fee Schedule (As of October 27, 2020)

| Fee Type | Fee Description | Amount Charged |
|---|---|---|
| Late Charge | A Late Charge is assessed when a payment is received after the due date and applicable grace period | Generally, between 2% and 5% (of the principal and interest or net payment due) or a fixed charge between $15 and $30 that varies dependent upon the borrower's loan document terms, agency guidelines (Freddie Mac, Fannie Mae, USDA, FHA, VA) and applicable state law |
| Non-Sufficient Funds (NSF), Returned Check or ACH Return Fee | A NSF, Returned Check or ACH Return Fee is assessed when a payment is returned by the borrower's financial institution due to insufficient funds.  The borrower's financial institution may also assess a separate fee. | Up to $50 based on agency guidelines (Freddie Mac, Fannie Mae, USDA, FHA, VA) and applicable state law |
| ACH Set Up Fee (Bi-Weekly or Monthly) | A Fee to set up a reoccurring auto draft payment. A draft date is only available between the 1st and 10th of the month. | $0 |
| ACH Processing Fee (Bi-Weekly or Monthly) | A Fee to process a reoccurring auto draft payment | $0 |
| One-Time Fee for Payment Made Via Automated Phone System, Website or Mobile App | A Fee when making a one-time payment through our Automated Phone System, Website or Mobile App | Payment made on the $1^{st} - 5^{th}$ day of the month = $0 <br> Payment made on the $6^{st} - 10^{th}$ day of the month = $5 <br> Payment made after the 10th of the month=$10 |
| One-Time Fee for Payment Made Via a Customer Service Representative | A Fee when making a one-time payment through a Customer Service Representative | Payment made on the $1^{st} - 5^{th}$ day of the month = $5 <br> Payment made on the $6^{st} - 10^{th}$ day of the month = $10 <br> Payment made after the 10th of the month=$15 |
| Debit Card Fee for Payment Made Via Automated Phone System, Website, Mobile or Customer Service Representative | A Fee for processing any payment using a debit card.  This Fee is in addition to any one-time payment fee that may be charged. | Unavailable to take debit card payments at this time |

| Fee Type | Fee Description | Amount Charged |
|---|---|---|
| Payoff Quote Fee - Requested by a Borrower | A Fee charged to the borrower when requesting that a Payoff Quote be sent by fax or email | $0 |
| Payoff Quote Fee - Requested by a Third Party | A Fee charged to a Third Party when requesting that a Payoff Quote be sent by fax or email | $25 |
| Private Mortgage Insurance (PMI) Termination Request Fee | A Fee to evaluate a request to terminate PMI (does not include the property evaluation costs) | $0 |
| Document Request/Copy Fee | A Fee for fulfilling a reasonable request for copies of documents related to the borrower's mortgage loan | $0 |
| Document Recording Fee | A Fee assessed by a municipality for recording a document (may include documentary and other taxes that are assessed on the transaction) | Actual cost of the recording (varies by state and county) |
| Subordination Fee | A Fee for processing a request to subordinate an existing lien behind a new lien. Typically occurs when a second lien exists on the property and there is a request to refinance the first lien. | Up to $300 |
| Partial Release Fee | A Fee to process a request to release a portion of the borrower's property mortgaged as collateral | Up to $250 |
| Recast Fee | A Fee to process a request to modify the principal and interest payment amount using the current note and maturity date, generally following a large prepayment toward the principal | Up to $300 |
| Property Valuation- Broker Price Opinion (BPO) Fee | A Fee paid to a Licensed Real Estate Broker to provide a property valuation. Cost may be higher if the property is non-conforming or located in a rural or remote location. | Generally, not greater than $200 |
| Property Valuation- Appraisal Fee | A Fee paid to a Licensed Real Estate Appraiser to provide a property valuation.  Cost may be higher if the property is non-conforming or located in a rural or remote location. | Up to $1,500 |
| Assumption Fee | A Fee to process a request to change the individual(s) legally responsible for repayment of the mortgage loan | Up to $900 |
| Repair Inspection Fee | A Fee to have a third party verify that repairs were completed to meet required standards | Actual cost, up to $50 |
| Title Search and Report Fee | The Fee associated with a title search and report used by the trustee or foreclosure attorney | Up to $750 |
| Foreclosure Fees and Costs | The Fees and Costs associated with the foreclosure process | Generally, up to $5,000 |
| Bankruptcy Fees and Costs | The Fees and Costs associated with bankruptcy proceedings | Generally, up to $1,800 |
| Property Preservation Costs | The Costs associated with maintenance of vacant or abandoned properties to protect the property which may include, for example, lawn maintenance, debris removal and winterization | Up to $2,500 (based on actual cost) |
| Property Photo Cost | The Cost of photos to document property condition and/or that property preservation work was completed | Up to $35 (per maintenance event) |
| Property Inspections Fee | The Fee for an inspection to determine if the mortgaged property is occupied or vacant and is being maintained | Up to $60 |
| New York Consolidation, Extension and Modification (CEMA) Request Fee | A Fee to process a CEMA request | Actual cost of a NY CEMA, varies by county in New York. Generally, a minimum of $1,000. |

10/27/2020

# EXHIBIT 12

  

**Cleveland | Columbus | Cincinnati | New Jersey | New York**

216.373.0539
Telephone

notices@dannlaw.com
Email

216.373.0536
Facsimile

August 8, 2022

Mortgage Financial Services, LLC*
10922 Coursey Blvd., Suite B
Baton Rouge, LA 70816

*Sent via Certified Mail return receipt requested [7022 0410 0002 5263 6907]
**If responding to this correspondence via email, please send to notices@dannlaw.com

    **In the Matter of:**

    Borrower's Names:    Nicole Winstead
    Property Address:    47 Belmont Drive, Little Rock, AR 72204
    Mortgage Account No.:  █████████

**Re: Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to two (2) requests for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1) and renewed requests for information pursuant to 12 C.F.R. § 1024.36; notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly respond to a notice of error as required by 12 C.F.R. § 1024.35 and 12 U.S.C. §§ 2605(k)(1)(C) and (E)**

Dear Sir or Madam:

This is a notice of error and request for information under 12 C.F.R. §§ 1024.35 and 1024.36, respectively, of Regulation X of the Mortgage Servicing Act under the Real Estate Settlement Procedures Act (RESPA). The written authority of the above-referenced borrower (the "Borrower") authorizing our law firm to send this notice on her behalf concerning the above-referenced loan (the "Loan") is enclosed and incorporated herein by this reference. Mortgage Financial Services, LLC ("MFS") must send written notice acknowledging receipt of this notice *within five (5) business days*. *See* 12 C.F.R. §§ 1024.35(d) and 1024.36(c). MFS must respond to this notice *within thirty (30) business days* of receipt. *See* 12 C.F.R. §§ 1024.35(e)(3)(i)(C) and 1024.36(d)(2)(i)(B); *see also* 12 U.S.C. § 2605(k)(1)(C).

**Background Information:**

The Borrower, through our office, sent two (2) pieces of correspondence to MFS dated March 8, 2022, via U.S Certified Mail, specifically:

    1.  Correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" seeking additional information concerning the Loan, including a transaction history of the

August 8, 2022
Page 2



Loan, escrow analyses, and information related to loss mitigation, among other items [Tracking No. 70212720000057055070] (the "RFI");

2. Correspondence captioned "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to honor the terms of or otherwise implement or give effect to a loss mitigation plan; notice of errors pursuant to 12 C.F.R. § 1024.35(b)(5) for imposition of fees for which there was no reasonable basis to impose; request for information pursuant to 12 C.F.R. § 1024.36" [Tracking No. 70212720000057055056] (the "NOE/RFI").

***Copies of the RFI and the NOE/RFI, along with tracking information for the NOE/RFI, are enclosed for your reference.***

Through the NOE/RFI, the Borrower alleged that MFS committed an error related to the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) in failing to honor a loss mitigation plan the Borrower entered into with the prior servicer of the Loan (the "Agreement"), as well as multiple errors in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(5) for imposing fees, costs, and charges against Plaintiff and the Loan for which MFS lacked a reasonable basis as such amounts were the result of MFS's refusal to honor the Agreement.

Further, through NOE #1/RFI #1, the Borrower requested that MFS provide the following information:

1. A copy of any correspondence MFS sent to the Borrower since the origination of the Loan advising that servicing rights to the Loan transferred along with proof of delivery of the same to the Borrower; and,

2. A copy of any correspondence MFS sent to the Borrower since the origination of the Loan advising that ownership of the Loan transferred or that the Loan had otherwise been assigned, purchased, or sold to another entity, along with proof of delivery of the same to the Borrower.

MFS received the RFI and the NOE/RFI on or about March 14, 2022.

MFS sent correspondence dated March 22, 2022, in part, acknowledging receipt of the RFI and the NOE/RFI. MFS further sent correspondence dated April 22, 2022, responding, in part, to the RFI and the NOE/RFI (the "Response").

To date, MFS has failed to provide, *inter alia*, the following information requested through the RFI:

1. A life of loan mortgage transaction history—the provided transaction history only dates back to November 2021; and,

2. Copies of any and all servicing notes related MFS's servicing of the Loan.

Moreover, in relation to the requests for information contained in the NOE/RFI, MFS did



provide a copy of correspondence dated December 1, 2021, stating that the servicing rights to the Loan were being transferred from "Mortgage Financial Services, LLC to MORTGAGE FINANCIAL SERVICES, LLC subserviced by ServiceMac, LLC", but no other such correspondence was provided. Presumably, some other correspondence should have been generated advising the Borrower of the transfer of servicing rights from ServiSolutions to MFS, and not just MFS to itself, but MFS failed to provide such correspondence. Moreover, MFS failed to provide proof of mailing or delivery of any of the notices requested through NOE #1/RFI #1 despite the Borrower expressly requesting the same and disputing whether any such notice was provided.

**Error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to two (2) requests for information in violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) and renewed request for information pursuant to 12 C.F.R. § 1024.36:**

12 C.F.R. §1024.36(d) provides:

> (1) *Investigation and response requirements.* Except as provided in paragraphs (c) and (f) of this section, a servicer must respond to an information request by either:
> > (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
> > (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.
> (2) *Time Limits.*
> > (i) *In general,* a servicer must comply with the requirements of paragraph (d)(1) of this section:
> > > (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan.
> > > (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

A servicer does not have to comply with 12 C.F.R. § 1024.36(c) or 12 C.F.R. § 1024.36(d) if the request seeks substantially the same information as a prior request, the information sought is confidential, proprietary, or privileged, the information is not directly related to a borrower's specific mortgage loan account, or the request is overbroad or unduly burdensome. *See* 12 C.F.R. § 1024.36(f)(1). Moreover:



If a servicer determines that, pursuant to this paragraph (f), the servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section, the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination. The notice to the borrower shall set forth the basis under paragraph (f)(1) of this section upon which the servicer has made such determination.

12 C.F.R. § 1024.36(f)(2).

Through the Response, MFS stated that the "remaining items requested are considered proprietary, confidential, privileged or irrelevant to the servicing of this [Loan]".

As to relevance, all of the information requested through the RFI and the NOE/RFI is relevant to the Loan. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(f)(1)(iii) provides:

    1.  Examples of irrelevant information. The following are examples of irrelevant information:
        i.  Information that relates to the servicing of mortgage loans other than a borrower's mortgage loan, including information reported to the owner of a mortgage loan regarding individual or aggregate collections for mortgage loans owned by that entity;
       ii.  The servicer's training program for servicing personnel;
     iii.  The servicer's servicing program guide; or
     iv.  Investor instructions or requirements for servicers regarding criteria for negotiating or approving any program with a borrower, including any loss mitigation option.

Supplement 1 to Part 1024. The requests contained in the RFI and the NOE/RFI bear no relation to the types of requests the CFPB have determined to be "irrelevant".

Further, Comment 1 to 12 C.F.R. § 1024.36(f)(1)(ii) provides illustrative examples as to what constitutes confidential, proprietary, or privileged information for the purposes of requests for information pursuant to 12 C.F.R. § 1024.36:

    1.  Confidential, proprietary or privileged information may include information requests relating to, for example:
        i.    Information regarding management or profitability of a servicer, including information provided to investors in the servicer.
       ii.    Compensation, bonuses, or personnel actions relating to servicer personnel, including iii. personnel responsible for servicing a borrower's mortgage loan account;
     iii.    Records of examination reports, compliance audits, borrower complaints, and internal investigations or external investigations; or
     iv.    Information protected by the attorney-client privilege.

August 8, 2022
Page 5



Supplement 1 to Part 1024. The unfulfilled requests contained in the RFI and the NOE/RFI do not bear any resemblance to the types of requests through which the CFPB provides guidance as to what constitutes a request that seeks proprietary, confidential, or privileged information, and regardless, to the extent that such information may be included within some of the information and/or documents requested through the RFI and the NOE/RFI, such information and/or documentation can be withheld and/or redacted as the fact that some such information may be contained within such documents does not wholly absolve MFS of their obligation to produce any information contained within such documents that is not proprietary, confidential, or privileged.

MFS's actions, in failing to provide all the information requested by and through the RFI, are in violation of 12 C.F.R. § 1024.36. *Further, MFS's actions constitute two (2) errors in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11), one such error for each of the requests for information to which MFS failed to properly respond.*

***Further, the Borrower hereby makes her information requests contained in the RFI and the NOE/RFI anew, and requests that MFS provide the information requested through the RFI and the NOE/RFI that was not previously provided through the Response, specifically:***

1. A copy of any correspondence MFS sent to the Borrower since the origination of the Loan advising that servicing rights to the Loan transferred along with proof of delivery of the same to the Borrower; and,

2. A copy of any correspondence MFS sent to the Borrower since the origination of the Loan advising that ownership of the Loan transferred or that the Loan had otherwise been assigned, purchased, or sold to another entity, along with proof of delivery of the same to the Borrower.

3. An exact reproduction of the life of loan mortgage transaction history for this loan from the contract system of record from your electronic software program for this loan. For purposes of identification, the life of loan transaction history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transaction history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

4. Copies of any and all servicing notes related MFS's servicing of the Loan.

**Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to properly respond to a notice of error as required by 12 C.F.R. § 1024.35 and 12 U.S.C. §§ 2605(k)(1)(C) and (E):**

A servicer must respond to a notice of error by:



Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1).

A servicer shall not:

    (C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;

    [...]

    (E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C. § 2605(k)(1).

In response to the NOE/RFI, MFS was required to either: (1) Correct the error(s) alleged by and through the NOE and provide the Borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or, (2) conduct a reasonable investigation and provide the Borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason(s) for this determination, a statement of the Borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the Borrower can request such documents, and contact information, including a telephone number, for further assistance. *See* 12 C.F.R. § 1024.35(e).

Through the Response, MFS wholly failed to reference or address the errors alleged by and through the NOE/RFI. As such, the Response was wholly unresponsive to the errors alleged through the NOE/RFI and therefore failed to comply with the requirements of 12 C.F.R. § 1024.35(e).

MFS's actions, in refusing or otherwise failing to send a proper response to the NOE/RFI, constitute a violation of 12 C.F.R. § 1024.35 and 12 U.S.C. §§ 2605(k)(1)(C) and (E). MFS's actions in violation of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) constitute an error related to the Loan pursuant to 12 C.F.R. § 1024.35(b)(11).



**Conclusion and Requested Actions:**

MFS committed at least three (3) errors as to the Loan as discussed *supra*.

Please correct these errors as requested and provide us with notification of the correction, the date of the correction, and contact information for further assistance. Alternatively, after conducting a reasonable investigation, provide the Borrower, *through our firm*, with a notification stating that MFS determined that no such error occurred, a statement of the reason(s) for said determination, a statement of the Borrower's right to request documents MFS relied upon in reaching its determination, providing information regarding how the Borrower can request such documents, and providing contact information for further assistance.

Please also provide the information requested pursuant to 12 C.F.R. § 1024.36 pursuant to the applicable timelines.

Best Regards,

Karen Ortiz

Enclosures